MODIFIED OPINION ON MOTION TO MODIFY OR CLARIFY OPINION
SOUTHWICK, P.J.,
for the Court:
¶ 1. After the release of our original opinion, the State moved for a modification pursuant to Appellate Rule 27(a). See M.R.A.P. 40 cmt. We grant the motion, withdraw the original opinion, and substitute this document. Armster Lacking was found guilty by a Pike County Circuit Court jury of kidnapping. On appeal, Lacking argues that there was insufficient evidence of kidnapping, that the child victim was not a competent witness, that a statement that the child made shortly after the incident was not admissible evidence, and that submission of the charge of lustful touching to the jury was reversible error. We disagree with these assertions and affirm the decision of the trial court.
FACTS
¶ 2. On March 21, 1998, the seven-year-old male victim was staying with his three sisters and a babysitter at his home while his mother was at work. Lacking, a third cousin of the child’s mother, appeared at the home and told the child that he would take him to the store. The child went with Lacking. When the mother returned home from work about 3:00 P.M., she discovered that her son was gone. The other children told her that he had gone with Lacking, whom the mother had warned to stay away from her home and her children. The boy’s mother recruited Leroy Butler to help her look for her son and Lacking. Butler found Lacking with the victim behind a local school building, holding the child between his legs and rubbing him in a lewd manner. Butler took the weeping child to his mother. When reunited with his mother, the boy related that Lacking had made him take his pants down and he down on the ground while Lacking put his penis on the child’s posterior. The boy was taken to a local hospital, where he was examined by a physician. The physician *733 found no evidence of forced entry, semen or sperm on the child.
¶ 3. The police were notified and Lacking was arrested. He was indicted for sexual battery and kidnapping. At trial, the court allowed, over objection, the testi-tnony of the seven-year-old victim as well as his mother’s testimony as to what he told her immediately after the incident. Following the close of the State’s case, the judged' granted a directed verdict on the charge of sexual battery because the State had presented no evidence of penetration, an essential element of the offense. The trial proceeded on the kidnapping charge, with the defense putting on its case.
¶4. After the close of all evidence, the judge informed the parties that he had erred by granting the directed verdict. He decided to submit an instruction allowing the jury to find Lacking guilty of the lesser-included offense of touching of a child for lustful purpose. The defense objected. The judge offered the defense an opportunity to reopen its case and present evidence on the lesser offense, but the defense declined. The jury reached a guilty verdict as to kidnapping and on lustful touching. Lacking moved for a judgment notwithstanding the verdict. The State confessed the motion as to the fondling charge, and to that extent only the motion was granted. From the conviction for kidnapping, Lacking appeals.
DISCUSSION

Issue 1: Testimony of the child victim.

¶ 5. Children of tender years may testify. In fact, every person is considered competent to be a witness with certain exceptions applicable to spouses of parties, a witness formerly convicted of a perjury offense, and appraisers in limited situations. M.R.E. 601. Before allowing a child to testify, the judge should determine whether the witness can perceive and recall events, can understand questions and answer them intelligently, and can appreciate and accepts the importance of truthful answers. Mohr v. State, 584 So.2d 426, 431 (Miss.1991).
¶ 6. In Mohr, the supreme court found that a seven-year-old victim of child fondling was a competent witness. Id. An even younger witness was found to be competent in Bailey v. State, 729 So.2d 1255, 1256 (Miss.1999).
¶ 7. Thus this witness’s age is not an impediment. The witness was first interrogated by the trial judge. The boy answered questions concerning his background, family, and residence. The judge then asked if he knew “what it means to tell the truth,” and the answer was “no.” Immediately following this answer was the following exchange:
Q. You don’t know what it means to tell the truth?
A. (No Answer.)
Q. Do you tell the truth?
A. (No Answer.)
Q. You need to speak out. Answer yes or no.
A. Yes, sir.
Q. What do you do when you tell the truth?
A. My Mama buys me something.
Q. What happens if you don’t tell the truth?
A. She spanks me.
Q. Does she spank you — when you don’t tell the truth, do you know what you call that?
A. A liar.
Q. A liar. Do you understand that you’re here as a witness today?
A. (No Answer.)
Q. To tell about some things that happened to you?
A. Yes, sir.
Q. Do you understand that you’re supposed to tell the truth?
A. Yes, sir.
Q. Is that what you’re going to do?
A. Yes, sir.
*734 ¶ 8. The court shortly thereafter also asked whether the boy knew “what the truth is,” and he responded that he did not. A few questions later the witness said that he would testify as to what happened and would not tell a he.
¶ 9. The seven-year old boy’s negative answers to the almost philosophical or at least arguably abstract questions of what it means to tell the truth may actually show only a careful attempt to understand exactly what he was being asked in this likely novel experience of being in the court-room. He gave what may be considered a honest statement of confusion regarding the question. Regardless, when pressed as to whether he would be truthful, the boy said that he would.
¶ 10. The trial court has reasonable discretion to determine the competency of a witness. Bowen v. State, 607 So.2d 1159, 1160 (Miss.1992). The trial judge conducted a proper examination of the witness and did not abuse his discretion in finding competence.

Issue 2: Hearsay statement

¶ 11. The trial judge allowed the mother’s testimony as to what her son told her immediately after the incident. The court ruled that the testimony was admissible as a present sense impression or in the alternative as an excited utterance.
¶ 12. The present sense impression rule requires a spontaneous statement “describing or explaining an event or condition while the declarant was perceiving” it or immediately afterwards. M.R.E. 803(1) & cmt. We need not decide whether this exception applies since as we will explain, we find that the trial court was correct in relying as a separate basis upon the excited utterance exception to the hearsay rule. M.R.E. 803(2). This exception applies to a “statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” Id. An excited utterance is considered reliable because of the belief that certain events cause a person to be so excited as to be beyond the capacity to reflect on his comments before making them; the absence of the ability to reflect presumably leads to the truth coming out. Owens v. State, 716 So.2d 534, 535-36 (Miss.1998).
¶ 13. Leroy Butler testified that when he found the child with Lacking, Butler took the boy immediately from the back of the school to his mother, who was at the other side of the school. Both the mother and Butler testified that the boy was visibly upset. Butler testified that the boy was crying when he was talking to his mother, but Butler did not hear what was being said. This suggests that the young child was still in the throes of the excitement from the incident while he was speaking to his mother. That would cause the statements to fit squarely within this exception.
[T]he weight of authority supports the characterization as an excited utterance of a child’s allegations of abuse volunteered within hours after the abuse allegedly occurred. While authorities do not fix a particular time period, the key indicia of trustworthiness appear to be evidence of excitement, voluntariness of statement, and closeness in time of the statement to the alleged incident.
Baine v. State, 606 So.2d 1076, 1079 (Miss.1992). See also Sanders v. State, 586 So.2d 792, 795 (Miss.1991) (fourteen-year old girl’s statements to crossing guard were excited utterances, as they were made within a few minutes of a sexual battery).
¶ 14. We find no abuse of discretion in the judge’s characterization of this testimony as an excited utterance. Therefore it was admissible.

Issue 8: Effect of directed verdict as to sexual battery.

¶ 15. Lacking contends that the court created reversible error in giving the jury an instruction on a lesser-included offense to sexual battery, even though a *735 directed verdict on sexual battery had earlier in the trial been granted. In his appeal brief, his counsel states that he had to spend much of the closing argument time “trying to convince the jury to find him not guilty of a crime with which he had never been charged,” namely the lustful touching, which did not allow him adequate time to present arguments on the kidnapping offense. We will address these contentions factually and legally.
¶ 16. First, we emphasize that the trial judge later determined that this was an error. He granted a judgment notwithstanding the verdict on the lesser-included offense. Secondly, there is nothing in the record to indicate that Lacking was limited in the amount of time that he was allowed for his closing statements. There is no evidence that the court imposed a time limit; there was no interruption by anyone to inform counsel that it was time to stop his argument. Even if the time limit actually existed, the failure for the record to support the claim prevents our relying upon it. On the face of the record, the defense counsel spoke for as long as he desired and sat down.
¶ 17. Finally, by granting a judgment notwithstanding the verdict as to the lesser included offense, the judge responded to what he thought was error and rectified the situation. The kidnapping charge was independent of the sexual offenses, with a separate jury instruction and a separate verdict. The evidence as to sexual battery was admitted by the State before the directed verdict, and thus any error by the court did not increase the quantum or quality of damaging testimony heard by the jury. There is no evidence that the defendant was in any way prejudiced by the judge’s rulings on sexual battery.
¶ 18. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF ARMSTER O. LACKING OF KIDNAPPING AND SENTENCE TO 25 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH DEFENDANT SERVING THE FIRST 20 YEARS AND THE REMAINING 5 YEARS TO BE SERVED ON POST RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO PIKE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.