**Keith Wayne SCHMIDT,
Plaintiff–Appellee**

v.

**Eric GRAY, State Trooper,
Defendant–Appellant.**

No. 09–20570.

United States Court of Appeals,
Fifth Circuit.

Oct. 26, 2010.

Keith Wayne Schmidt, Conroe, TX, pro se.

Karen Denise Matlock, Assistant Attorney General, Office of the Attorney General, Austin, TX, for Defendant–Appellant.

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

PER CURIAM: *

Defendant–Appellant Eric Gray, a Texas State Trooper, appeals the district court's denial of his motion for summary judgment in Plaintiff–Appellee Kevin Wayne Schmidt's 42 U.S.C. § 1983 action against Gray for use of excessive force. We affirm in part and dismiss in part.

## I.   FACTS & PROCEEDINGS

Gray stopped Schmidt because his license plate was not visible. Gray smelled alcohol on Schmidt, so he asked him to exit the car. After administering sobriety tests, Gray concluded that Schmidt was intoxicated, arrested him, and placed him in the front passenger seat of the patrol car. Schmidt then informed Gray that he needed medications from his car because

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

he suffered from a number of illnesses, including AIDS. While Gray was retrieving those medications, Schmidt began to have difficulty breathing and spit mucus into an empty paper cup in the patrol car. When Gray returned, Schmidt told him about spitting into the cup, after which Gray became upset that Schmidt had spread his bodily fluids in the patrol car. Gray called for a deputy sheriff who was driving a patrol car with a protective divider so that Schmidt could be taken to jail in it because Gray was worried that Schmidt would spit on him and infect him. While waiting for that car, Gray walked Schmidt to the rear of Gray's patrol car. At some point, Gray closed the trunk lid, which had been left open, slamming it on Schmidt's thumb.

Schmidt alleges that Gray intentionally slammed the trunk lid on his thumb in retaliation for Schmidt's spitting in the cup. Gray counters that he did not notice Schmidt's hand near the trunk lid and that closing it on Schmidt's thumb was an accident.

Schmidt filed suit against Gray, asserting claims under the Americans with Disabilities Act (ADA) and § 1983.[1] Gray filed a motion for summary judgment seeking qualified immunity. The district court granted Gray's motion as to Schmidt's ADA claims and as to those of his § 1983 claims based on denial of medical treatment and conspiracy, but denied Gray's motion as to Schmidt's § 1983 claim based on use of excessive force, ruling that a genuine issue of fact exists as to whether Gray injured Schmidt intentionally.

Gray appealed, asserting that the district court erred (1) in ruling that the harm to Schmidt's thumb constituted more than a de minimis injury; (2) in holding as a matter of law that Gray's conduct was not objectively reasonable, in violation of the Fourth Amendment; and (3) in accepting Schmidt's version of the facts that Gray's conduct was intentional despite the patrol car video.[2]

## II. ANALYSIS

### A. Jurisdiction

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine 'to the extent that it turns on an issue of law.' "[3] We interpret

---

1. The record on appeal shows that Schmidt originally filed suit against the State of Texas, the Texas Department of Public Safety (DPS), and Montgomery County Hospital District—EMS Division (EMS) in addition to Gray. The district court, however, dismissed Schmidt's claims against the State of Texas and the DPS in an earlier order and dismissed the claims against EMS in granting its motion for summary judgment.

2. Schmidt failed to file a response brief, but neither the Federal Rules of Appellate Procedure nor our circuit rules suggest that an appellee's failure to file a brief should have any effect on the appeal beyond the sanction provided in Federal Rule of Appellate Procedure 31(c) that "[a]n appellee who fails to file a brief will not be heard at oral argument unless the court grants permission." We agree with the position of other circuits that

the courts should "decide the appeal on the appellant's brief alone when the appellee fails to file a brief." *Allgeier v. United States*, 909 F.2d 869, 871 n. 3 (6th Cir.1990) (citing *Instituto Nacional v. Cont'l Ill. Nat'l Bank*, 858 F.2d 1264, 1270–71 (7th Cir.1988); *United States v. Everett*, 700 F.2d 900, 902–03 n. 5 (3d Cir.1983)). *See also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1478 (9th Cir.1992) ("The only sanction authorized by the Federal Rules of Appellate Procedure for an appellee's failure to file a timely brief is refusal to hear the appellee at oral argument. The limited nature of this sanction coincides with our duty to affirm the judgment on any ground fairly supported by the record.") (citations omitted).

3. *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir.2004) (quoting *Mitchell v. Forsyth*,

a district court's denial of qualified immunity as comprising "two distinct determinations, even if only implicitly": (1) that the state actor's conduct "would, as a matter of law, be objectively unreasonable in light of clearly established law"; and (2) that "a genuine issue of fact exists regarding whether the [state actor] did, in fact, engage in such conduct."[4] "According to the Supreme Court, as well as our own precedents, we lack jurisdiction to review conclusions of the *second* type on interlocutory appeal."[5] When we review determinations of the *first* type, however, "we ignore the disputes of fact, take those facts assumed by the district court in a light most favorable to [the non-movant], and determine whether under those facts [the non-movant] has stated a claim under clearly established law."[6]

In short, we have jurisdiction to entertain this appeal, but only to the extent that it concerns the "purely legal question" whether Gray is entitled to qualified immunity "on the facts that the district court found sufficiently supported in the summary judgment record."[7]

### B. Standard of Review

"We review *de novo* the scope of clearly established law and the objective reasonableness of the defendant government official's actions."[8] Nonetheless, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[9]

### C. Qualified Immunity

■ Gray's first two claims on appeal attack the district court's qualified immunity analysis. "Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[10] Therefore, once a state actor invokes the defense of qualified immunity, the court must conduct a two-prong test to determine whether the movant is entitled to such immunity: "First, we assess whether a statutory or constitutional right would have been violated on the facts alleged.... [Second,] we determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known."[11]

---

472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

4. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir.2004) (en banc).

5. *Id.* (emphasis in original and citations omitted). Put another way, "we can review the *materiality* of any factual disputes, but not their *genuineness.*" *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 (5th Cir.2000) (emphases in original and citations omitted).

6. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir.1996).

7. *Kinney*, 367 F.3d at 347 (citing *Behrens v. Pelletier*, 516 U.S. 299, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).

8. *Flores*, 381 F.3d at 394 (citing *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir.2001)).

9. *Kinney*, 367 F.3d at 348 (citing *Behrens*, 516 U.S. at 313, 116 S.Ct. 834; *Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)).

10. *Flores*, 381 F.3d at 393–94 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

11. *Id.* at 395 (internal citation and quotation omitted).

Schmidt alleged that Gray violated his Fourth Amendment right to be free from unreasonable seizures. To maintain a § 1983 claim for excessive force, Schmidt had to show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[12] There is no dispute that Schmidt was seized, but Gray asserts on appeal that the injury was de minimis and therefore legally insufficient to support a Fourth Amendment claim of excessive force.

The injury necessary to support such a claim "must be more than a de minimis injury and must be evaluated in the context in which the force was deployed."[13] We have recognized, however, that even insignificant injuries may "qualify as a cognizable injury when the victim is maliciously assaulted by a police officer."[14] "What constitutes an injury in an excessive force claim is therefore subjective—it is defined entirely by the context in which the injury arises."[15]

At the time of Schmidt's alleged injury, he was not attempting to flee or resist Gray's arrest; he was merely standing next to the patrol car as Gray had instructed him to do. When we accept Schmidt's factual assertions as true—that Gray in-tentionally leaned him against the car and then maliciously slammed the trunk lid on his finger in retaliation against Schmidt and not for any law enforcement purposes—the resulting pain, soreness, and bruising, combined and in context, qualify as a legally cognizable injury. The district court found that "the pain resulting from having one's thumb slammed in a car's trunk could be at least as intense as the pain resulting from a kick or a temporary chokehold, and possibly comparable to that caused by a cattle prod."[16] As that finding is not clearly erroneous, we affirm the district court's holding that the alleged injury is sufficient to support a claim of excessive force.

Completing our excessive force analysis, we conclude that the second element is satisfied because the injury unquestionably resulted from Gray's use of force. For the third element, given that neither party contends that *any* use of force was necessary against Schmidt at the time, Gray's use of force was objectively unreasonable under the nonviolent, nonresistant circumstances of Schmidt's arrest.[17] In sum, Schmidt pleaded facts that are legally sufficient to maintain a § 1983 claim for use of excessive force.

Lastly, we address the second prong of the qualified immunity analysis and Gray's claim that a reasonable person would not

---

**12.** *Id.* at 396 (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000)).

**13.** *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).

**14.** *Williams*, 180 F.3d at 704.

**15.** *Id.*

**16.** R. at 487.

**17.** *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir.1998) ("To determine the objective reasonableness of [an officer's] conduct, ... [w]e pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.' ") (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

have believed that his "mistaken" actions violated the Fourth Amendment.[18] At the time of this incident, it was clearly established that Schmidt had a constitutional right to be free from excessive force during an investigatory stop or arrest.[19] Gray insists that the injury was accidental and that he reasonably believed that he acted in compliance with the Fourth Amendment.[20] The facts alleged by Schmidt that we accept on appeal, however, are not that Gray *accidentally* slammed the trunk door on Schmidt's thumb, but that Gray did so *intentionally*. As it is not clear as a matter of law that, under Schmidt's version of the facts, Gray's conduct was objectively reasonable, we affirm the district court's denial of qualified immunity to Gray.

### D. Genuine Issue of Fact

Gray maintains on appeal that the district court erred in accepting Schmidt's version of the facts that allege Gray's conduct was intentional. Gray contends that Schmidt's allegations are "implausible" and "blatantly contradicted" by his patrol car's video.[21] In its review of Gray's qualified immunity defense, however, the district court found that "Plaintiff has created a fact issue as to ... whether Gray intended to slam the trunk on Plaintiff's thumb."[22] Gray fails to accept that, when "the district court has determined that there are genuine disputes raised by the evidence, we assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under these circumstances."[23] As "this court lacks jurisdiction to review the court's determination that a genuine fact issue exists,"[24] we must dismiss Grey's interlocutory appeal of this claim.

### III. CONCLUSION

For the foregoing reasons, we conclude as a matter of law that Schmidt alleged an injury sufficient to support his § 1983 excessive force claim and alleged conduct that a reasonable person would have known violated the Fourth Amendment. We accordingly AFFIRM the district court's denial of Gray's motion for summary judgment. We DISMISS Gray's claim that the patrol car's video disproves the existence of a genuine fact issue because we lack jurisdiction to review that determination of the district court.

---

18. Appellant's Br. at 22–23.

19. *See Graham*, 490 U.S. at 393–94, 109 S.Ct. 1865.

20. Appellant's Br. at 23.

21. *Id.* at 18.

22. R. at 487–88 ("The Court acknowledges Gray's claim that he closed the trunk on Plaintiff's fingers purely by accident. It is quite possible that, upon hearing Gray's version of events, a jury will find that no malice was involved and that Plaintiff's injuries do not support an excessive force claim. The Court cannot, however, substitute its judgment for that of the jury....").

23. *Wagner*, 227 F.3d at 320.

24. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir.2007).